IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CV-75-FL

| JACKIE LEE CHESTER, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ADAMS AUTO WASH, INC. | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion to dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 21). Plaintiff has filed a response, and the matter is now ripe for ruling.

## BACKGROUND

Plaintiff, proceeding *pro se,* filed complaint February 5, 2013, alleging employment discrimination based on race. (DE 4). On October 2, 2013, defendant filed a motion to dismiss and answer to the complaint in a single document. (DE 21). The court denied the defendant's motion to dismiss based on Rule 12(b)(6) without prejudice, but directed plaintiff to file a more particularized complaint. (DE 26). Plaintiff subsequently filed an amended complaint, (DE 27), to which defendant again filed an answer and motion to dismiss, with a supporting memorandum of law. (DE 36, 37). Plaintiff filed his response on January 2, 2014.

## STATEMENT OF FACTS

The facts, alleged by plaintiff in the amended complaint and accepted as true for purposes of this order, are as follows.

Plaintiff, an African-American male, was employed with defendant and SeaCor Inc.[1] for the period from November 17, 2009, to April 29, 2011. On December 15, 2009, he was falsely accused of improperly touching a female employee. He was given a "write-up" for the incident. General Manager Benny Scott and Regional Director John Mcguiness warned plaintiff that he would be fired if he was caught talking to the employee again. After that incident, another female employee told plaintiff that Scott and Mcguiness referred to him with a racial slur. Plaintiff was then brought in to manage defendant's detail shop. In the detail shop, Benny Scott issued him more write-ups, which prevented him from earning commission pay for his work. In addition, they set higher monthly quotas for him to reach each month than previous white managers were expected to achieve.

On slow days in the detail shop, plaintiff was told that he had to work in a different area for less pay. Sometimes he was sent home. However, when work was slow for previous white managers of the detail shop, they had been allowed to remain in the detail shop for the same pay, or worked in other areas for the same pay. Also unlike previous white managers, plaintiff was never given keys to the shop, taught how to operate computers, or permitted to perform detail work on his own vehicles or on vehicles owned by family members.

In July 2010, plaintiff brought his Cadillac into the shop to use as a model for his work for customers. Scott demanded that he remove it from the shop. Management also told plaintiff that they would not fix things that were broken in the shop, or provide him with tools to fix them himself. That same month, owners brought in a Korean immigrant to the car wash. Plaintiff was asked to

---

[1] The relationship between SeaCor Inc. and Adams Auto Wash, Inc. is unclear. However, plaintiff's original complaint and this amended complaint name Adams Auto Wash, Inc. as sole defendant. Thus, the court finds that SeaCor Inc. is not a party to this action.

train the immigrant. Eventually, the immigrant was given a promotion to operate a shop in Richmond, Virginia. Plaintiff was passed over for that position.

Plaintiff observed a black co-worker, "Artez," get fired because Artez missed work after he was not able to find a baby-sitter. Meanwhile, white co-workers were permitted to come to work drunk, but were given more hours for more pay. White co-workers who had been fired were permitted to come back with the same pay, but Artez was not accepted back after his termination. Plaintiff also heard Benny Scott refer to another black co-worker, Barry Ingram, with a racial slur. On one occasion, a white employee crashed a vehicle into the side of the shop. Ingram was blamed for the incident because he left the window down on the vehicle. Plaintiff told the Vice President, Neil Yoon, about these incidents. Yoon told him he would "do something about that racial bias," but never took action. Instead, Scott cut plaintiff's hours for complaining about the double standard. Plaintiff's hours were cut to six hours per week, and he was assigned to a low-pay position vacuuming cars. Plaintiff applied for unemployment benefits and defendant opposed his application.

On April 29, 2011, plaintiff washed his vehicle in the car wash tunnel. When Scott learned that plaintiff owned the vehicle, he forbid employees to dry it down, even though company policy permitted employees to dry down the cars of other employees that had been through the wash. Scott then summoned plaintiff to his office and informed plaintiff he was being terminated for providing an incorrect estimate on a Porsche truck. That incorrect estimate had been provided one year earlier. Plaintiff was ordered to leave the premises.

**COURT'S DISCUSSION**

A.      Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does

3

not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949, and Twombly, 550 U.S. at 557).

B.  Analysis

Defendant raises three grounds for the court to dismiss under Rule 12(b)(6). First, it alleges that plaintiff's complaint is "not numbered, contains no dates and mostly matters that are not related to racial discrimination in employment matters." However, documents filed *pro se* are "liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Wojcicki v. Aiken Tech College, 360 F. App'x 484, 487-488 (4th Cir. 2010)(citing Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002)). "A complaint need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (internal punctuation

4

omitted). Plaintiff's failure to conform to Rule 10's formal requirements does not prevent the complaint from achieving its fundamental purpose of giving defendant this fair notice. Nor does the failure to provide specific dates on which each alleged incident occurred, given that plaintiff has provided enough detail to permit defendant to identify many of the incidents. Casanova v. Ulibarri, 595 F.3d 1120, 1125 (10th Cir. 2010) ("[I]nclusion of a specific date may not be necessary to state a claim if the complaint alleges sufficient detail about an event to identify it."). These specifics can be determined during discovery. Finally, plaintiff has stated numerous instances of receiving different, discriminatory treatment from his white co-workers. Even if the complaint consisted "mostly" of matters unrelated to employment discrimination, one allegation of employment discrimination would be enough to give defendant fair notice of the claim and its grounds.

Second, defendant argues that plaintiff's amended complaint should be dismissed because it was never made to the Equal Employment Opportunity Commission ("EEOC"). Defendant particularly notes that plaintiff's EEOC charge provided the dates of April 10, 2011, to April 29, 2011, as the dates of discrimination. (DE 1-2, p. 2). The complaint lists three particulars:

> I. I have worked for Adam's Auto Wash since November 17, 2009, most recently as a Detail Shop Manager. Beginning March 15, 2011, my hours were reduced. On April 29, 2011, I was discharged from that position. . .
>
> II. Mr. Benny Scott, General Manager, reduced my hours from 20 to 8 per week, so I was forced to file for unemployment. Mr. Scott said I was terminated because I solicited outside work.
>
> III. I believe I have been discriminated against based on my race, [b]lack[,] and in retaliation for complaining about unlawful acts. . .

In contrast, defendant asserts that the complaint is filled with allegations of racial slurs and other actions that the charge did not discuss, and that occurred before April 10, 2011.

Title VII requires a plaintiff to exhaust administrative remedies by filing a charge with the

5

EEOC before filing in federal court. 42 U.S.C. § 2000e-5(b), (f)(1). This requirement helps to ensure that "the employer is put on notice of the alleged violations" and respects Congressional intent to "use administrative conciliation as the primary means of handling claims." Sydnor v. Fairfax County, 681 F.3d 591, 593-594 (4th Cir. 2012). The contents of the charge determines the scope of the plaintiff's right to file a federal lawsuit. Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009). A plaintiff fails to exhaust administrative remedies when his charges refer to different time frames, actors, and conduct than his suit's central factual allegations. Sydnor, 681 F.3d at 593. Nevertheless, the administrative charge "does not strictly limit a Title VII suit which may follow. . .so long as a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation." Id. at 594.

The Fourth Circuit has found a failure to exhaust administrative remedies when a plaintiff raises charges of discrimination on new grounds. Bryant v. Bell Atl. Md., Inc., 288 F.3d 124 (4th Cir. 2002) (administrative investigation of retaliation, color and sex discrimination could not reasonably be expected to occur in light of plaintiff's sole charge of race discrimination). Yet it has found exhaustion when both the EEOC charge and the federal complaint involved claims of discriminatory action based on different discriminatory conduct by the same actor on the same grounds of discrimination. Smith v. First Union National Bank, 202 F.3d 234, 247-249 (4th Cir. 2000) (EEOC charge alleging that management retaliated against plaintiff by chastising her and threatening to terminate her employment for consulting with counsel was reasonably related to complaint alleging that management retaliated against her by forcing her to work in an undesirable position and not offering other positions).

6

Furthermore, under Title VII a plaintiff typically has 180 days following the alleged unlawful employment practice to file an EEOC charge. 42 U.S.C. § 2000e-5(e)(1). While the statutory filing period extends to 300 days in a "deferral state," 42 U.S.C. § 2000e-5(e)(1), North Carolina is only a deferral state in limited circumstances not applicable here. Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 539 (E.D.N.C. 2008). Discrete discriminatory acts–such as termination, failure to promote, denial of transfer, or refusal to hire–are not actionable if time barred, even when related to acts alleged in timely filed charges. Amtrak v. Morgan, 536 U.S. 101, 113-114 (2002). However, a "hostile work environment" claim is composed of "a series of separate acts that collectively constitute one unlawful employment practice." Id. at 117. If any one of these acts contributing to the claim occurs within the filing period, the court may consider the entire time period of the hostile environment. Id.

As noted above, the only specific acts of discrimination asserted in the EEOC charge included a reduction of plaintiff's hours and his termination. However, plaintiff's complaint alleges incidents including (1) a false accusation of sexual harassment against him, (2) use of racial slurs in the workplace, (3) false write-ups for unspecified violations that reduced plaintiff's pay, (4) being required to meet a higher quota than previous detail shop managers, (5) receiving less pay than previous white managers, (6) not being allowed to log hours for the same activities that white managers were allowed to log hours, (7) being denied keys to the shop or other indicia of responsibility, (8) being denied the opportunity to perform detail work on his own car, in contrast to previous white managers, (9) being passed over for a promotions and management jobs awarded to others, (10) the firing of another black employee for invalid reasons, (11) disciplinary action taken against another black employee when a white employee crashed an SUV into a wall of the detail

7

shop, (12) plaintiff's hours being cut after he complained about racial discrimination and double standards, (13) the car wash refusing to make repairs to the detail shop while he was manager, but making them after he was replaced by a white manager, and (14) plaintiff's termination.

Of these incidents, plaintiff has only provided precise dates for his termination and the reduction of his hours. He also states that the incident where he was not allowed to perform detail work on his own car occurred in July 2010. It appears that the majority of allegations occurred prior to the April 10, 2011, date that defendant listed in his EEOC charge. However, this alone should not require the court to ignore the allegations.

> To compel the charging party to specifically articulate in a charge filed with the Commission the full panoply of discrimination which he may have suffered may cause the very persons Title VII was designed to protect to lose that protection because they are ignorant of or unable to thoroughly describe the discriminatory practices to which they are subjected.

Edwards v. Murphy Brown, L.L.C., 760 F. Supp. 2d 607, 626 (E.D.Va. 2011) (citing Gamble v. Birmingham S. R.R. Co., 514 F.2d 678, 689 (5th Cir. 1975)).

The test, as noted above, is whether the claims "are reasonably related to [the] EEOC charge and can be expected to follow from a reasonable administrative investigation." Sydnor, 681 F.3d at 593. An investigation of the circumstances surrounding the reduction in plaintiff's hours, his termination, and retaliation for his complaints could reasonably discover evidence regarding these other alleged acts of racial discrimination that Scott committed against him. Plaintiff's failure to set an earlier date for the period that discrimination commenced does not necessarily bar those actions from consideration. See Edwards, 760 F. Supp. 2d at 626. Furthermore, plaintiff's complaint includes the same two actions of reduced hours and termination that were brought in his EEOC charge. Dismissal is therefore inappropriate.

8

However, actionable acts of discrimination must still fall within the 180-day deadline for filing a charge with the EEOC. Although the EEOC charge bears the signature of September 10, 2011, plaintiff has shown the date that he actually filed this charge. It is difficult at this stage to determine exactly when the period begins for actionable events. Certainly, the incidents that occurred in July 2010, are not independently actionable because they fall outside the appropriate time period. However, prior acts may still be used as background evidence in support of plaintiff's claim of wrongful termination and reduced hours. Morgan, 536 U.S. at 117.

In addition, plaintiff appears to have alleged facts sufficient to constitute a hostile work environment claim. In such a case, the various incidents comprising a hostile work environment are all considered part of a single claim, and the timely filing provision only requires that an act contributing to the claim occurs within the appropriate filing period. Morgan, 536 U.S. at 117. Accordingly, the court finds plaintiff has not failed to exhaust administrative remedies.

Finally, defendant moves to dismiss on the grounds that

> [t]he amended Complaint itself fails to state a claim upon which relief can be granted in that it is a claim for racial discrimination it: a. fails to give a date for the alleged discriminatory act(s) other than during his employment of 1 year and 5 months; b. fails to allege that the Plaintiff was treated different than someone of a different race or classification; and c. fails to allege that the job promotion he says was denied based on race even existed or that it was filled by someone else or even that he made an actual application for the alleged promotion.

(DE 36, p. 2).

The above discussion already addresses grounds (a) and (b). Plaintiff's complaint does not need to provide specific dates, and plaintiff has sufficiently alleged that he has been discriminated against based on his race. As to (c), the amended complaint details that plaintiff was passed over for a promotion to a position in Richmond, Virginia in favor of a Korean. (DE 27, at 5). This is

9

Case 5:13-cv-00075-FL   Document 42   Filed 01/24/14   Page 9 of 10

sufficient. Even were it not, it would not defeat plaintiff's claims based on his reduced hours and termination. Accordingly, the court must deny defendant's motion to dismiss.

## CONCLUSION

For the foregoing reasons, the court DENIES defendant's motion to dismiss.

SO ORDERED this the 24th day of January, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge